UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDUVIGIS PEREZ<br><br>     Plaintiffs,<br><br>          vs.<br><br>SETERUS, INC.; FEDERAL NATIONAL MORTGAGE ASSOCIATION; STERN LAVINTHAL & FRANKENBERG, LLC; JOHN DOES I-X, | HON.<br>Civil Action No. 2:17-cv-5862<br><br>**COMPLAINT AND JURY DEMAND** |

EDUVIGIS PEREZ, of full age, hereby Complains of Defendants as follows:

## PRELIMINARY STATEMENT

Plaintiff Eduvigis Perez is a hard working immigrant and mother making incredible sacrifices to improve the lives of her family.  In 2010 Mrs. Perez made the difficult choice to file for bankruptcy but she did so under Chapter 13 of the United States Bankruptcy Code because it was essential to her to fulfil debt obligations.  During the bankruptcy action, the mortgage loan in question as twice modified and both modifications were approved by the Bankruptcy Court.  Throughout the bankruptcy there were no allegations that Mrs. Perez failed to uphold her obligations on the 2012 modification.

After the second modification in 2012, it appears the bank made a series of critical servicing errors that resulted in

exposing Mrs. Perez to wrongful debt collection, inaccurate credit reporting, and a wrongful foreclosure action among other horrors. Mrs. Perez was shocked in 2016 when the bank suddenly returned her monthly mortgage payment and thereafter refused to accept payments on the loan. Mrs. Perez attempted to fix the problem by communicating with the loan servicing company, and the attorneys who pursued the debt collection foreclosure lawsuit against her. Mrs. Perez was largely ignored, and the wrongful conduct continued well after the Defendants were placed on notice of their wrongdoing. Having exhausted efforts to resolve this controversy directly with the Defendants, Mrs. Perez comes before this Court seeking relief.

## JURISDICTION AND VENUE

**1.** Jurisdiction is appropriately laid in the United States District Court, District of New Jersey pursuant to 28 USC §1331 as the claim in question is based upon a federal statute and Federal Question Jurisdiction.

**2.** Venue is appropriately laid in the District Court of New Jersey pursuant to 28 USC §1391(b)(2) as the events giving rise to the claim occurred substantially within the State of New Jersey.

## PARTIES

**3.** Plaintiff Eduvigis Perez ("Plaintiff") owns and resides in the real property located at 4 South Prospect Avenue

2

Bergenfield, New Jersey.

**4.**   Defendant Seterus, Inc. ("Seterus") services the mortgage loan associated with Plaintiff's property.  Seterus maintains its principal location of business in Research Triangle Park, North Carolina.  Seterus maintains an agent for service of process in New Jersey at The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

**5.**   Defendant Federal National Mortgage Association ("Fannie Mae") owns the mortgage loan associated with Plaintiff's real property.  Fannie Mae maintains its principal place of business at 3900 Wisconsin Avenue NW, Washington, DC 20016-2892.

**6.**   Stern Lavinthal & Frankenberg, LLC is a law firm specializing in debt collection and foreclosure litigation. Stern Lavinthal & Frankenberg, LLC maintains its principal place of business at 105 Eisenhower Parkway, Suite 302 in Roseland, New Jersey 07068.

## FACTS COMMON TO ALL COUNTS

**7.**   Plaintiff owns and resides in real property located in Bergenfield New Jersey.

**8.**   The property is Plaintiff's primary residence.

**9.**   In May 2007 Plaintiff entered into a mortgage loan contract with American Financial Resources, Inc.  In connection with the mortgage loan contract Plaintiff and her husband executed a mortgage in favor of American Financial Resources, Inc., and

3

Eduvigis Perez executed a promissory note in the amount of $304,000.00 payable to American Financial Resources, Inc.

**10.**  Soon thereafter the mortgage loan was sold.

**11.**  On information and belief, Defendant Fannie Mae has owned the mortgage loan at all times since January 2010.

**12.**  In 2010 Plaintiffs had a financial hardship and defaulted on the mortgage loan.

**13.**  On June 22, 2010 Plaintiffs filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the District of New Jersey, Docket Number 10-29058.

**14.**  In June 2010 the mortgage servicing company for Plaintiff's mortgage loan was Indymac Mortgage Services, a division of Onewest Bank, FSB ("Onewest Bank, FSB").

**15.**  On July 21, 2010 Plaintiffs executed a loan modification agreement provided by Onewest Bank, FSB.  The 2010 modification agreement was countersigned by the lender.  A copy of the 2010 modification is attached hereto as **Exhibit 1**.

**16.**  The 2010 modification was approved by Bankruptcy Judge Donald H. Steckroth.

**17.**  Thereafter in September 2012, Onewest Bank, FSB offered Plaintiffs a superseding loan modification agreement, a copy of which is attached hereto as **Exhibit 2**.  ("2012 loan modification")

**18.**  Plaintiffs signed the 2012 loan modification on September

4

19, 2012 and Onewest Bank, FSB countersigned the 2012 loan modification on April 10, 2013.

**19.** On March 18, 2013 Bankruptcy Judge Donald H. Steckroth entered an Order as Document 50, approving the 2012 Loan Modification.  The Order instructs "All arrears are to be rolled into the mortgage modification and therefore the Trustee should make no further disbursements on the arrears claim as filed."

**20.** Upon execution of the 2012 loan modification the material terms of the mortgage loan changed and Plaintiffs were deemed to be current and performing on the mortgage loan.

**21.** The 2012 loan modification extended the term of the loan, changed the interest rate, and the principal amount owed on the loan.

**22.** Pursuant to the 2012 loan modification, the first payment was due on October 1, 2012.

**23.** On information and belief, One West Bank, FSB failed to properly credit Plaintiff's payments on the 2012 Modification and the problem became exacerbated as loan servicing subsequently transferred.

**24.** Beginning in October 2012, Plaintiffs made forty six (46) consecutive monthly payments pursuant to the 2012 loan modification, until Seterus refused to accept payments in August 2016.

**25.** On October 28, 2013 a Transfer of Claim was filed as

Document 61 on the Bankruptcy docket, indicating servicing of Plaintiff's loan was transferred from Onewest Bank to Ocwen Loan Servicing, LLC ("Ocwen").

**26.** By letter from Ocwen dated April 15, 2015, Plaintiffs were notified that effective May 1, 2015 the servicing of the mortgage loan would be managed by Seretus, Inc.

**27.** Thereafter on May 28, 2015 a Transfer of Claim was filed as Document 68 on the Bankruptcy Dkt. No. 10-29058 indicating servicing of Plaintiff's loan was transferred from Ocwen to Fannie Mae care of Seterus.

**28.** By taking over servicing of the mortgage loan, Seterus stood in place of the prior loan servicers in privity of contract with Plaintiff.

**29.** On December 2, 2015 an Order of Discharge was filed in the Chapter 13 Bankruptcy proceeding, indicating that Plaintiffs had fulfilled all obligations to the creditors.

**30.** During the Chapter 13 Bankruptcy Plaintiffs made all required payments on the 2012 loan modification.

**31.** Following execution of the 2012 Loan Modification and during the pendency of the Chapter 13 Bankruptcy, no mortgage loan servicing company or mortgage loan owner advised the bankruptcy court that Plaintiff defaulted or otherwise failed to make a complete loan payment.

**32.** Beginning with the first monthly loan statement issued by

Seterus, the loan servicing company inaccurately claimed Plaintiff was delinquent on the mortgage loan.

**33.** On information and belief, Seterus, Inc. failed to credit one or more of Plaintiff's payments to the mortgage loan account.

**34.** On information and belief, Seterus, Inc. failed to review the complete loan history which demonstrates that Plaintiff made each monthly payment between October 2012 and April 2016.

**35.** On information and belief, Seterus, Inc. directed its agent to inspect Plaintiff's property monthly beginning in May 2015 when the mortgage loan was still subject to the Chapter 13 Bankruptcy.

    **a.** Seterus, Inc. inappropriately charged Plaintiffs $15.00 for each inspection.

    **b.** Seterus, Inc. and/or Fannie Mae were not permitted under law or contract to conduct monthly property inspections and charge Plaintiffs for the cost.

**36.** Following the April 12, 2016 payment reversal, Plaintiffs continued to send payments to Seterus, Inc., however some of these payments were rejected and after August 2016, Seterus refused to accept payments from Plaintiff.

**37.** By letter dated April 19, 2016, Seterus, Inc. sent Plaintiffs a document titled "NOTICE OF INTENTION TO FORECLOSE" a copy of which is hereto attached as **Exhibit 3**.

    **a.**   The Notice of Intention to Foreclose identifies Fannie Mae as the owner of Plaintiff's mortgage loan.

    **b.**   The Notice of Intention to Foreclose incorrectly claims that "the loan is in default because you have failed to pay the required monthly installments commencing with the payment due 01/01/2016."

    **c.**   The Notice of Intention to Foreclose incorrectly alleges that as of 04/01/2016, the past due sum owed on the mortgage loan was $8,129.57.

    **d.**   The Notice of Intention to Foreclose states "THIS COMMUNICATION IS FROM A DEBT COLLECTOR A… WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

**38.** Seterus, Inc. and/or Fannie Mae retained the law firm of Stern Lavinthal & Frankenberg, LLC ("Stern Lavinthal") to pursue a debt collection foreclosure lawsuit.

**39.** On September 22, 2016 the law firm of Stern filed a debt collection foreclosure lawsuit in Bergen County New Jersey under state court docket number F-26124-16. A copy of the foreclosure complaint is attached hereto as **Exhibit 4**.

    **a.**   The foreclosure complaint describes the 2012 Loan Modification at paragraph "1-i.".

    **b.**   The foreclosure complaint states that Fannie Mae is the "Owner of the Note and Mortgage."

    **c.**    The foreclosure complaint inaccurately states that the default date on the Plaintiff's mortgage loan is April 1, 2016.

    **d.**    Stern Lavinthal attorney Djibril Carr, Esq. executed an affidavit filed with the foreclosure complaint, stating that on September 15 and 22, 2016 Ms. Carr communicated with Seterus Inc. employee Urlet Hill who confirmed that the contents of the foreclosure complaint were true and accurate.

**40.** Plaintiffs did not file a responsive pleading or otherwise contest the foreclosure action, instead, Plaintiffs attempted to work with Seterus to correct the billing error and continued to send payments on the mortgage loan to Seterus, Inc..

    **a.** Seterus ignored or refused to correct the billing errors.

    **b.** After August 2016 all payments were returned and not accepted.

**41.** On January 31, 2017 Stern Lavinthal filed a Motion for Final Judgment in the foreclosure debt collection lawsuit.

**42.** The Motion for Final Judgment includes an affidavit of Seterus, Inc. employee Kurt Bowling submitted on behalf of Fannie Mae, a copy of which is attached hereto as **Exhibit 5**. The affidavit includes false allegations regarding the amount owed on the loan. The false and/or inaccurate charges include

9

the following:

    **a.**   The affidavit incorrectly claims that Plaintiff owed Seterus, Inc. and/or Fannie Mae $20,765.61 for real estate taxes dating back to April 2014 when Plaintiff was making full payments on the loan.

    **b.**   The affidavit incorrectly claims that Plaintiff owed Seterus, Inc. and/or Fannie Mae $3,103.00 for hazard insurance dating back to March 2014 when Plaintiff was making full payments on the loan.

**43.** On February 22, 2017 the New Jersey Court entered final judgment in foreclosure[1].

**44.** Thereafter, Plaintiffs retained legal counsel.

**45.** On May 4, 2017 through their attorney, Plaintiff's contacted attorney Jeanette F. Frankenberg, Esq., the managing member of Stern Lavinthal by email and regular mail. A copy of the letter without accompanying exhibits is attached hereto as **Exhibit 6**.

    **a.**   The May 4 letter placed Stern Lavinthal with specificity and exhibits, that they utilized false, inaccurate, and/or deceptive information in connection with the collection of a debt.

**46.** On May 4, 2017 Plaintiff's counsel also spoke with Stern Lavinthal attorney Vincent Ricigliano, Esq. who assured

---

[1] Plaintiff is seeking relief in State Court to vacate the judgment.

Plaintiff's counsel that a prompt investigation would take place.

**47.** Between May 4, 2017 and July 14, 2017, Plaintiff's counsel and Stern Lavinthal maintained communications and exchanged emails seventeen times. Despite the ongoing communications, Stern Lavinthal refused to remedy the situation and instead made repeated requests for additional time to allow Seterus Inc. and/or Fannie Mae to investigate the matter.

**48.** On or about May 15, 2017 Plaintiff sent Sterus, Inc. a Request for Information under 12 C.F.R. 1024.36 and Notice of Error under 12 C.F.R. 1026.35. A copy of the May 15 letter without accompanying exhibits is attached hereto as **Exhibit 7**.

<u>**COUNT I**</u>

**BREACH OF CONTRACT**

**(Fannie Mae, Seterus, Inc.)**

**49.** Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**50.** In or about September 2012, One West Bank, FSB as loan servicer for Fannie Mae, offered Plaintiff Eduvigis M. Perez a permanent loan modification contract.

**51.** The 2012 loan modification is a contract.

**52.** Plaintiff relied upon the contract as drafted by or on behalf of Fannie Mae.

**53.** Plaintiff complied with all terms of the 2012 loan

modification contract.

54. Plaintiff signed the 2012 loan modification on September 19, 2012 and commenced making payments on the modification contract in October 2012.

55. On March 18, 2013 the 2012 Modification was approved by the New Jersey Bankruptcy Court.

56. On or about April 10, 2013 Indymac Mortgage Services, a division of One West Bank, FSB countersigned the 2012 loan modification.

57. Seterus, Inc. took over servicing of the mortgage.

58. By taking over servicing of the mortgage loan, Seterus, Inc. assumed servicing responsibilities and stands in place of predecessor loan servicing companies One West Bank, FSB and Ocwen with privity of contract.

59. Seterus, Inc. was obligated to comply with the terms of the 2012 loan modification contract.

60. One or more of Seterus, Inc.'s predecessors in interest as loan servicer failed to apply one or more of Plaintiff's monthly mortgage payments and Seterus, Inc. failed and/or refused to correct the error.

61. Seterus, Inc. failed to apply one or more of Plaintiff's monthly mortgage loan payments.

62. Seterus, Inc. improperly declared Plaintiff to be in default on the mortgage loan obligation.

**63.** In May 2017 Mrs. Perez sent Seterus, Inc. proof of all payments and demonstrated to Seterus, Inc. that it failed to account for one or more of Plaintiff's payments and improperly declared the loan to be in default.

**64.** Seterus, Inc. failed to correct its error.

**65.** Seterus, Inc. wrongfully stopped accepting payments on the mortgage loan tendered by Plaintiff.

**66.** Seterus, Inc. wrongfully began collection efforts by threatening to and subsequently pursuing a foreclosure debt collection lawsuit.

**67.** Seterus, Inc. was acting at all times in its own capacity and on behalf of mortgage owner Fannie Mae.

**68.** Fannie Mae is liable for all actions of its agent Seterus, Inc as well as prior loan servicing companies.

**69.** The conduct of Defendants constitutes a breach of contract.

**70.** As a result of the Defendant's conduct, Plaintiff has suffered damages including legal fees, wrongfully charged interest, damage to credit, emotional damages, and wrongfully charged late fees.

**71.** Plaintiff is entitled to recovery of damages resulting from Defendant's wrongful conduct.

## COUNT II

### BREACH OF COVENENT OF GOOD FAITH AND FAIR DEALING

### (Fannie Mae, Seterus, Inc.)

72.   Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

73.   Plaintiff and Defendant's entered into an enforceable contract.

74.   In New Jersey, every contract, in addition to its express terms, contains an implied covenant of good faith and fair dealing.

75.   Plaintiff has acted in good faith, repeatedly trying to deposit the payments due per the terms of the contract as modified in 2012.

76.   Defendants have failed to apply one or more of Plaintiff's monthly mortgage loan payments in the manner required by the contract.

77.   Fannie Mae and Seterus, improperly declared Plaintiff to be in default on the mortgage loan obligation.

78.   Plaintiff made good faith efforts to have Defendants correct the record by sending proof of all payments and demonstrating to Seterus, Inc. that it failed to account for one or more of Plaintiff's payments and improperly declared the loan to be in default.

14

**79.**  Defendant Seterus, Inc. failed to correct its error.

**80.**  Seterus, Inc. wrongfully stopped accepting payments on the mortgage loan tendered by Plaintiff.

**81.**  Seterus, Inc. wrongfully began collection efforts by threatening to and subsequently pursuing a foreclosure debt collection lawsuit.

**82.**  The wrongful conduct of Seterus, Inc. was conducted on its own behalf and on behalf of loan owner Fannie Mae.

**83.**  Defendants have failed to act in good faith and deal fairly with Plaintiff Perez.

**84.**  As a result of the Defendants conduct, Plaintiff has been damaged and is entitled to relief.


### COUNT III

**VIOLATION OF THE FAIR DEBT COLLECTIN PRACTICES ACT**

**15 U.S.C. §§1692 *et seq.***

**(Seterus, Inc.; Stern Lavinthal & Frankenberg, LLC)**

**85.**  Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**86.**  Plaintiffs are consumers as that term is defined by 15 U.S.C. §1692a(3).

**87.**  The mortgage loan that is the subject of this litigation is a debt as that term is defined by 15 U.S.C. §1692a(5).

**88.**  Defendant Seterus, Inc. is a debt collector as that term is

defined by 15 U.S.C. §1692a(6).

**89.** Seterus, Inc. violated 15 U.S.C. §1692e by using false, deceptive and/or misleading representations or means in connection with the collection of a debt. The following conduct are non-exhaustive examples of Seterus, Inc.'s wrongful behavior in violation of 15 U.S.C. §1692e.

    **a.** Seterus, Inc. made false representations as to the character, amount and/or legal status of the debt.

    **b.** Seterus, Inc. sought to collect money not owed by Plaintiffs.

    **c.** Seterus, Inc. threatened to take action and took action it was not legally entitled to take.

    **d.** Seterus, Inc. improperly declared the loan to be in default.

    **e.** Setrus, Inc. added and sought to collect impermissible fees and charges such as inspection fees and late fees to the loan.

**90.** Defendant Stern Lavinthal is a debt collector as that term is defined by 15 U.S.C. §1692a(6).

**91.** Stern Lavinthal violated 15 U.S.C. §1692e by using false, deceptive and/or misleading representations or means in connection with the collection of a debt. The following conduct are non-exhaustive examples of Stern Lavinthal's wrongful behavior in violation of 15 U.S.C. §1692e.

**a.**   Stern Lavinthal made false representations of the character, amount and/or legal status of the debt.

**b.**   Stern Lavinthal sought to collect money not owed by Plaintiffs.

**c.**   Stern Lavinthal threatened to take action and took action it was not legally entitled to take.

**d.**   Stern Lavinthal used a false and/or inaccurate default date in an attempt to collect a debt from Plaintiffs.

**92.**   The wrongdoing identified in this Complaint is intended to place Defendants on notice of their wrongdoing and is not an exhaustive list. It is anticipated that additional violations of the Fair Debt Collection Practices Act will be discovered during discovery.

**93.**   As a result of the actions of Seterus, Inc. and Stern Lavinthal, Plaintiff has suffered damages.

**94.**   As a result of the actions of Seterus, Inc. and Stern Lavinthal, Plaintiff is entitled to all relief available under 15 U.S.C. §1692k including but not limited to statutory damages, actual damages, attorney fees and costs of suit.

<u>COUNT IV</u>

**VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**

**12 U.S.C. §2601 et seq.**

**(Seterus, Inc.)**

**95.** Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if reiterated in the entirety herein.

**96.** On or about May 15, 2017 Plaintiff sent a Qualified Written Request ("QWR") consisting of a Request for Information and a Notice of Error, to Seterus, Inc.  A copy of the letter is attached as **Exhibit 7**.

**97.** By letter dated May 18, 2017 Seterus, Inc. confirmed receipt of the QWR and confirmed the owner of the loan is Fannie Mae.

**98.** By letter dated June 16, 2017, Seterus, Inc. produced documents response to the Request for Information portion of the QWR.  A copy of the cover letter conveying the response is attached hereto as **Exhibit 8**.

    **a.** Seterus, Inc. improperly refused to provide servicing records provided to Seterus, Inc. by prior loan servicing company Ocwen Financial Corporation.

    **b.** Seterus, Inc. improperly refused to produce servicing records reviewed by Seterus, Inc. in connection with its determination to commence a debt collection foreclosure

lawsuit against Plaintiff.

**99.** The June 16 letter discusses the Notice of Error portion of Plaintiff's QWR and states:

> We further investigated the payment history provided to us by the prior servicers One West and Ocwen Loan Servicing and have been unable to determine why the loan became delinquent. As a result we have escalated the payment concerns to Ocwen Loan Servicing and have asked that Ocwen Loan Servicing provide this information. As of the date of this letter Seterus has not received a sufficient response from Ocwen Loan Servicing in order to address the payment concerns. Once we have sufficient detailed information we will follow up with additional correspondence with our findings. If we can confirm there are no missing payments all late fees, property inspection fees and foreclosure fees will be reversed from the loan. We have confirmed that an update has been sent to the major credit reporting agencies for this loan to suppress all credit reporting with the major credit reporting agencies at this time. Once the research is completed by the prior servicer we will review the credit reporting and make any necessary adjustments at that time if deemed necessary. Please be advised we are not able to make any adjustments to the credit reporting until the research is completed by the prior servicer.

**100.** By letter dated June 29, 2017, Seterus wrote to Plaintiff's attorney. A copy of the letter is hereto attached as **Exhibit 9**. The letter states:

> We are still in the process of reviewing your request and need additional time to complete it, as we are waiting to receive information from the prior servicer(s) of this loan. Once we have completed our research we will send you a written response detailing our findings.

**101.** By letter dated July 21, 2017, Seterus sent a follow up letter providing Seterus' final conclusion relating to

Plaintiff's Notice of Error.  A copy of the letter without exhibits is attached hereto as **Exhibit 10**.

     **a.** The July 21 Seterus letter incorrectly concludes that there are no errors in the servicing of the loan.

     **b.** The July 21 Seterus letter incorrectly asserts that at the time servicing of the loan was transferred to Seterus the loan was in default.

     **c.** The July 21 Seterus letter incorrectly asserts that Plaintiffs failed to make eight escrow payments in the amount of $1,565.82 and one payment of $1,544.15 between October 2012 and June 2013.

     **d.** The July 21 Seterus letter incorrectly asserts that when Plaintiff's "loan transferred to Seterus on May 1, 2015, the loan was delinquent for the January 1, 2015 contractual installment."

**102.** Despite concluding in the July 21, 2017 letter that Plaintiff defaulted on the 2012 Modification before May of 2015, Seterus and/or Fannie Mae did not make a claim or objection to the Chapter 13 Bankruptcy Court prior to the date of discharge in December 2015.

**103.** Seterus failed to conduct a reasonable investigation as required by 12 C.F.R. §1024.35(e).

**104.** To the extent Seterus conducted an investigation, it ignored Plaintiff's records and unreasonably relied upon

inaccurate information from prior loan servicing company Ocwen to reach its conclusion.

**105.** Seterus failed to correct the errors identified by Plaintiffs as required by 12 C.F.R. §1024.35(e).

**106.** Seterus, Inc. failed to comply with its obligations under 12 C.F.R. §1024.35.

**107.** As a result of Seterus, Inc.'s failure and/or refusal to properly investigate and respond to the Notice of Error in the manner required by the Real Estate Settlement Procedures Act, Plaintiff has suffered damages including emotional distress, economic loss, prolonged credit damage, attorney's fees, a wrongful foreclosure lawsuit, as well as wrongful late fees interest and inspection charges.

**108.** As a result of Seterus, Inc.'s failure to properly respond to the QWR, Plaintiff is entitled to relief as set forth in 12 U.S.C. §2605 including actual damages, attorney fees, costs of suit and all other relief the Court finds suitable.

## COUNT V

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §1681 et seq.

### (Seterus)

**109.** Plaintiffs reincorporate by reference all allegations set forth elsewhere in the complaint as if set forth in full herein.

**110.** Seterus published false representations about Plaintiff to all of Plaintiff's potential lenders on multiple occasions including but not limited to information provided to Experian, Equifax and Transunion in March of 2017.

**111.** In March 2017 Plaintiff requested and received a copy of her credit file from Experian Information Solutions, Inc., Transunion LLC, and Equifax Inc.

> **a.** All three of the credit files contained inaccurate information regarding Plaintiff's mortgage loan as furnished by Seterus.

**112.** Plaintiff placed Seterus on notice that it furnished inaccurate information regarding Plaintiff and her account status to one or more consumer reporting agencies.

**113.** Seterus' chose not to correct the inaccurate information and continued to furnish inaccurate credit information to the consumer reporting agencies.

**114.** The July 21 letter from Seterus marked **Exhibit 10** states in part:

> As no errors were found we respectfully decline to adjust the credit reporting or remove any fees.

**115.** Seterus violated the Fair Credit Reporting Act 15 U.S.C. §1681s-2 in one or more of the following ways:

> **a.** Seterus continued to furnish and make representations within Plaintiff's credit file with Experian and Transunion

22

without including a notation that the debt is disputed.

**b.** Seterus failed to fully and properly investigate the Plaintiff's dispute of Seterus' representations.

**c.** Seterus failed to review all relevant information regarding Plaintiff's dispute.

**d.** Seterus failed to accurately respond to Experian and Transunion.

**e.** Seterus failed to correctly report results of an accurate investigation to each credit reporting agency.

**f.** Seterus failed to permanently and lawfully correct its own internal records to prevent re-reporting false and/or inaccurate information to the consumer reporting agencies.

**g.** Seterus continued to report inaccurate and/or false information to consumer reporting agencies.

**116.** As a result of Seterus' conduct, action and inaction, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and damage associated with credit denials.

**117.** Seterus' conduct, action and inaction was willful, rendering it liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant's action as negligent and Plaintiff is entitled to recover damages pursuant to 15 U.S.C. §1681o.  Plaintiff is entitled to recover

costs and attorney's fees from Seterus in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**WHEREFORE**, PLAINTIFF demands:

    **a.** Compensatory Damages

    **b.** Punitive Damages

    **c.** Statutory Damages

    **d.** Restitution

    **e.** Injunctive Relief

    **f.** Attorney fees and costs

    **g.** All other relief this Court determines to be just and fair.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury and will not be satisfied with fewer than six jury members.

NORTHEAST LAW GROUP, LLC
ATTORNEYS FOR PLAINTIFF

August 8, 2017

*/S/ Adam Deutsch*
Adam Deutsch, Esq.

# EXHIBIT 1

IndyMac Mortgage Services Loan No.: █████████
Fannie Mae Loan No.: █████████
Reference No.: █████████

_____ [Space Above This Line For Recording Data]_____

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made on July 14, 2010 between Eduvigis M Perez ("Borrower") and IndyMac Mortgage Services, a division of OneWest Bank®, FSB ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 5/16/2007 and recorded on 5/31/2007 in Book or Liber 16776, at page(s) 453, or Instrument or Document No. _____ of the Records of BERGEN, NJ (County and State or other jurisdiction) and the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property" located at 4 Prospect Ave, Bergenfield, NJ 07621, the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of July 14, 2010, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $304,825.31 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.625%, from 8/1/2010. Borrower promises to make monthly payments of principal and interest of U.S. $2,027.22, beginning on 9/1/2010, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 6.625% will remain in effect until principal and interest are paid in full. If on 6/1/2037 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

The terms of your Modification Agreement require the servicer to establish an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. IndyMac Mortgage Services will draw on this account to pay your real

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT Form 3179 1/01 (rev. 01/09)(page 1 of 4)

estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that IndyMac Mortgage Services must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. We will separately notify you of the initial amount of this new escrow payment.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT Form 3179 1/01 (rev. 01/09) (page 2 of 4)

(a) above.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_____ (Seal)
-Lender

By: _____ 10/____ Richard E. Myatt, AVP

_____ (Seal)    Date 7/21/10
Eduvigis M Perez

_____ (Seal)    Date _____

Mortgage Electronic Registration Richard E. Myatt, AVP
Systems, Inc. - Nominee for Lender

_____[Space Below This Line For Acknowledgment]_____

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT Form
3179 1/01 (rev. 01/09) *page 4 of 4*

# EXHIBIT 2

Reference #: ███████████████

MERs ID: ████████████████

Investor Loan #: ████████████

After Signing Return To:
IndyMac Mortgage Services
Mailcode: IndyMac-5
2900 Esperanza Crossing
Austin, TX 78758

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):[1] Eduvigis M Perez
Lender or Servicer ("Lender"): IndyMac Mortgage Services
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 5/16/2007
Loan Number: 1009944453
Property Address ("Property"): 4 Prospect Ave, Bergenfield, NJ 07621

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. I live in the Property as my principal residence, and the Property has not been condemned;

    C. There has been no change in the ownership of the Property since I signed the Loan Documents;

    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3157** 3/09 (rev. 8/09) *(page 1 of 5 pages)*

6/8 9000000059 (8/10)

Reference #: ████████████

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 10/1/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 10/1/2012.

    A. The new Maturity Date will be: 4/1/2041.

    B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $317,556.82 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C. Interest at the rate of 2.00000% will begin to accrue on the New Principal Balance as of 9/1/2012 and the first new monthly payment on the New Principal Balance will be due on 10/1/2012. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-5   | 2.00000%      | 9/1/2012                  | $1,216.28                                     | $683.55, may adjust periodically         | $1,899.83, may adjust periodically | 10/1/2012 | 60 |
| 6     | 3.00000%      | 9/1/2017                  | $1,353.11                                     | May adjust periodically                  | May adjust periodically | 10/1/2017 | 12 |
| 7-29  | 3.62500%      | 9/1/2018                  | $1,439.59                                     | May adjust periodically                  | May adjust periodically | 10/1/2018 | 271 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Reference #: ▋▋▋▋▋▋▋▋

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

   D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

   E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements**. I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program

Reference #: ▓▓▓▓▓▓▓▓

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s);(d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

Indymac Mortgage Services, a division of OneWest Bank, FSB

Indymac Mortgage Services, a division of OneWest Bank, FSB

Lender

By: _____

Samuel M. Countess, Assistant Vice President

4-10-13

Date

Mortgage Electronic Registration
Systems, Inc. - Nominee for Lender

Eduvigis M Perez

Sept. 19, 2012

Date

Betty A. Cotton, Assistant Secretary

[Space Below This Line For Acknowledgement]

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3157                                                                                     3/09 (rev. 8/09) (page 5 of 5 pages)

6/10 900000061 *[10/10]*

# EXHIBIT 3

# seterus™

PO Box 1077; Hartford, CT 06143-1077

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way; Suite 200; Beaverton, OR 97005

**Payments**
PO Box 11790; Newark, NJ 07101-4790

4-769-18734-0001521-001-01-000-000-000-000 *L177AH.1*
PEREZ, EDUVIGIS M
4 S PROSPECT AVE
BERGENFIELD NJ 07621-1919

**Correspondence, Inquiries and Notices**
PO Box 1077; Hartford, CT 06143-1077

**Phone:** 866.570.5277
**Fax:** 866.578.5277
www.seterus.com

April 19, 2016
Loan number:
Serviced by Seterus, Inc.

## NOTICE OF INTENT TO FORECLOSE

FIRST CLASS MAIL AND CERTIFIED, RETURN RECEIPT REQUESTED

RE: 4 S PROSPECT AVE
BERGENFIELD, NJ 07621-0000

Dear PEREZ, EDUVIGIS M:

Federal National Mortgage Association ("Fannie Mae") holds the mortgage on your property and is the owner of your loan.

This loan is in default. If full payment of the amount in default is not made by 05/24/2016, a mortgage foreclosure lawsuit against you may be initiated. Foreclosure proceedings will not be commenced unless and until allowed by applicable law. In this case, the plaintiff's name and address in the mortgage foreclosure proceeding will be Fannie Mae at 3900 Wisconsin Ave. NW, Washington , DC 20016-2892.

Please be advised of the following:
1. A mortgage dated 05/16/2007 was given to secure the loan in the original principal amount of $304,000.00 and is a lien against that certain residential property located at 4 S PROSPECT AVE, BERGENFIELD, NJ 07621-0000.

2. The loan is in default because you have failed to pay the required monthly installments commencing with the payment due 01/01/2016.

   As of 04/01/2016, Total Monthly Payments (including principal, interest, and escrow if applicable), late fees, insufficient funds (NSF) fees, and other fees and advances due under the terms of your loan documents in the total amount of $8,129.57 are past due.

   This past-due amount is itemized below. If applicable, your account may have additional escrow amounts that have been paid out and are due on the loan.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY**: 1411669, 1411665, 1411662. **TENNESSEE**: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.

PEREZ, EDUVIGIS M
April 19, 2016
Loan number:

| Total Monthly Payments: | $7,918.76 |
| Late Fees: | $60.81 |
| Insufficient Funds (NSF) Fees: | $0.00 |
| Other Fees and Advances*: | $0.00 |
| Advances*: | $150.00 |
| Amount Held in Suspense: | $0.00 |

*Other Fees and Advances include those assessed in accordance with your loan documents, and/or permitted by applicable law, or that were authorized for services rendered. If you need additional information regarding any of these amounts, please contact us at the number provided below.

Because of interest, late charges, and other charges that vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after your payment is received. For further information, write to Seterus at the address identified in paragraph 10 of this letter.

3. You have the right to bring your loan up-to-date ("cure the default") at any time, up to the entry of a Final Judgment in Foreclosure or Order of Redemption, if applicable. To cure this default, you must pay all sums that would have been due in the absence of default at the time of such payment, perform any other obligation that you would have been bound to perform in the absence of default or the exercise of an acceleration clause, pay court costs, if any, and attorney fees in an amount not to exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey, and pay all contractual late charges as provided for in the note or mortgage.

To avoid the initiation of a foreclosure proceeding, you must cure the default by paying or tendering the sum of $8,129.57 as itemized above, on or before 05/24/2016.

4. Payment or tender must be made to Seterus, Inc., PO Box 11790; Newark, NJ 07101-4790 or contact Megan Peura at **866.570.5277** Ext. .

If you send only a partial payment, we may keep the payment, but the entire remaining outstanding amount will still be due.

5. If the default is not cured by the date stated in paragraph 3 regarding the initiation of a foreclosure proceeding, we may take steps to terminate your ownership in the property by initiating foreclosure proceedings in a court of competent jurisdiction. You could lose your home as a result of the mortgage default.

6. If foreclosure proceedings are commenced, you still have the right to cure the default as stated in paragraph 3, but you will be required to pay the lender's court costs and attorney fees in an amount not to exceed the amount permitted pursuant to the Rules Governing the Courts of the State of New Jersey.

7. You have the right to transfer the mortgaged property to another person pursuant to terms of the Mortgage and any such transferee may have the right to cure the default as provided for by law, subject to the provisions of the Mortgage documents.

8. You should seek counsel from an attorney at law of your own choice concerning your residential mortgage default situation. If you are unable to obtain an attorney, you may communicate with the New Jersey Bar Association or Lawyer Referral Service in the county in which the residential property securing the mortgage loan is located. If you are unable to afford an attorney, you may be eligible for free subsidized legal assistance and you may communicate with the Legal Services Office in the county in which the mortgaged property is located.

INTERNET REPRINT

PEREZ, EDUVIGIS M
April 19, 2016
Loan number: ▮▮▮▮▮▮

9. You may be eligible for financial assistance in curing the default from programs operated by the State or Federal governments, or non-profit organizations, if any, identified by Commissioner of Banking of the State of New Jersey, whose telephone number is 609.292.3420.

10. If you disagree with our assertion that the mortgage is in default or if you disagree with the correctness of the amount required to cure the default as stated in the letter, you may contact:

Megan Peura
Seterus, Inc.
PO Box 1077; Hartford, CT 06143-1077
866.570.5277 Ext.

While we will attempt to address any concerns, our review will not necessarily delay our decision to commence foreclosure proceedings.

If the mortgage is foreclosed, the mortgaged property will be sold by the Sheriff or other officer authorized by law and the proceeds of sale applied to the mortgage debt. You also may be sued personally for all sums due under the note or other instrument evidencing your personal obligation to repay the loan, as provided for by law. Payment must be in cashier's check, certified check, or money order and payable to us at the address stated in this letter. Please include your loan number on any payment or correspondence.

You may have options available other than foreclosure. You may discuss available options with us or a counselor approved by the United States Department of Housing and Urban Development (HUD). We encourage you to explore available options prior to the end of the right-to-cure period. See below for a list of counseling agencies approved by HUD operating to assist mortgagors in the State of New Jersey to avoid foreclosure. You also may review this list by visiting www.hud.gov and following the links for foreclosure counseling:

| AMERICAN CREDIT ALLIANCE, INC. | NEW JERSEY CITIZEN ACTION | URBAN LEAGUE OF ESSEX |
| 26 S Warren St | 744 Broad St | COUNTY |
| Trenton, NJ 08608-2108 | Suite 2080 | 508 Central Ave |
| Phone: 609.393.5400 | Newark, NJ 07102 | Newark, NJ 07107 |
| Website: www.501plan.org | Phone: 973.643.8800 | Phone: 973.624.9535 |
| | Toll-free: 800.656.9637 | Website: www.ulec.org |
| | Website: www.njcitizenaction.org | |

Nothing contained in this letter or in any other communication regarding the loan shall modify or waive any term or provision of the loan. The status of your loan may be reported to credit reporting agencies.

If foreclosure proceedings are commenced against you, you have the right to assert in such proceedings the non-existence of default or any other defense you may have to acceleration or foreclosure, as provided for by applicable law. In addition, you may have other rights provided for by state law, by federal law, or by the mortgage contract document.

If you cure the default, the Mortgage will be restored to the same position as if no default had occurred.

PEREZ, EDUVIGIS M
April 19, 2016
Loan number:

If you have any questions, please contact us at 866.570.5277. For borrowers having difficulty making their payments, we have loan specialists available Monday-Thursday 5 a.m. to 9 p.m., Friday 5 a.m. to 6 p.m., and Saturday 9 a.m. to 12 p.m. (Pacific time). Saturday hours may vary.

Sincerely,

Seterus, Inc.

**IMPORTANT NOTE: This letter does not impact any loss mitigation offers that you may have recently received; you can still choose to accept that offer by responding as directed in that offer.**

Enclosures: NJ CCCS List

## Fair Foreclosure Act Notice of Intention to Foreclose - List of Entities Providing Assistance

The following is a list of governmental and non-profit entities that may provide financial assistance or counseling to borrowers in foreclosure.

| | | |
|---|---|---|
| American Credit Alliance, Inc.<br>26 S. Warren St.<br>Trenton, NJ 08608<br>609-393-5400 | Atlantic Human Resources, Inc.<br>1 S. New York Ave.<br>Atlantic City, NJ 08401<br>609-348-4131 | Consumer Credit Counseling Service of Central New Jersey<br>1931 Nottingham Way<br>Hamilton, NJ 08619<br>609-586-2574 |
| Consumer Credit Counseling Service of New Jersey<br>185 Ridgedale Ave.<br>Cedar Knolls, NJ 07927-1812<br>973-267-4324 | Fair Housing Council of Northern New Jersey<br>131 Main St.<br>Hackensack, NJ 07601<br>201-489-3552 | Garden State Consumer Credit Counseling, Inc.<br>225 Willowbrook Road<br>Freehold, NJ 07728<br>1-800-992-4557 |
| Jersey Counseling & Housing Development, Inc.<br>29 S. Blackhorse Pike<br>Blackwood, NJ 08012<br>856-227-3683 | Jersey Counseling & Housing Development, Inc.<br>1840 S. Broadway<br>Camden, NJ 08104<br>856-541-1000 | Mercer County Hispanic Association<br>200 E. State St., 2nd Floor<br>Trenton, NJ 08607<br>609-392-2446 |
| Middlesex County Economic Opportunities Corporation<br>1215 Livingston Ave.<br>North Brunswick, NJ 08902<br>732-790-3344 | Monmouth County Human Services Housing Services Unit<br>P.O. Box 3000<br>Freehold, NJ 07728<br>732-431-7998 | NJ Citizen Action (main office/financial education center)<br>744 Broad St., Suite 2080<br>Newark, NJ 07102<br>973-643-8800<br>1-800-NJ-OWNER (loan counseling)<br>1-888-TAXES-11 (free tax preparation assistance) |
| NJ Citizen Action (Central Jersey)<br>85 Raritan Ave., Suite 100<br>Highland Park, NJ 08904<br>732-246-4772 | NJ Citizen Action (South Jersey)<br>2 Riverside Drive, Suite 362<br>Camden, NJ 08103<br>856-966-3091 | Ocean Community Economic Action Now, Inc.<br>22 Hyers St.<br>Toms River, NJ 08753-0773<br>732-244-2351, ext. 2 |
| Paterson Coalition for Housing, Inc.<br>262 Main St., 5th Floor<br>Paterson, NJ 07505<br>973-684-5998 | Paterson Task Force for Community Action, Inc.<br>155 Ellison St.<br>Paterson, NJ 07505<br>973-279-2333 | Puerto Rican Action Board Housing Coalition Unit<br>90 Jersey Ave.<br>New Brunswick, NJ 08903<br>732-249-9700 |
| Tri-County Community Action Agency, Inc.<br>110 Cohansey St.<br>Bridgeton, NJ 08302<br>856-451-6330 | Urban League for Bergen County<br>106 W. Palisade Ave.<br>Englewood, NJ 07631<br>201-568-4988 | Urban League for Essex County<br>508 Central Ave.<br>Newark, NJ 07101<br>973-624-9535 |
| Urban League of Union County<br>288 N. Broad St.<br>Elizabeth, NJ 07208<br>908-351-7200 | Homelessness Prevention Program<br>New Jersey Department of Community Affairs<br>(866) 889-6270* | |

*Basic eligibility is limited to: (a) single family owner/occupied dwellings with all those on the deed and mortgage occupying the house; (b) no more than one mortgage or lien encumbrance on the property; (c) no initiated or ongoing bankruptcy. Assistance will be in the form of a loan, and a lien will be placed on the property. The family must document the financial reason for nonpayment. At the time of the eligibility decision, the household must have and document income sufficient to support the household and repay the loan. There is a fee for the credit check and property search.

## DOBI Licensed Debt Adjusters

The following is a list of State licensed debt adjusters that may provide debt adjustment.

| | | |
|---|---|---|
| American Credit Alliance, Inc.<br>Reference # 9201158<br>25 S. Warren St.<br>Trenton, NJ 08608<br>609-393-5400<br>www.americancreditalliance.com | Clearpoint Financial Solutions Inc/Credit Counselors<br>Reference # 9947115<br>8000 Franklin Farm Drive<br>Richmond, VA 23229<br>1-877-422-9040 or 804-222-4660<br>www.clearpointfs.org | Community Credit Counseling Corp<br>Reference # 9923779<br>5 Professional CIR Route 34<br>Colts Neck, NJ 07722<br>1-800-220-9654 or 1-800-663-4416<br>www.commcredit.org |
| Consolidated Credit Counseling Services, Inc.<br>Reference # 9826107<br>5701 W. Sunrise Blvd., Suite 200<br>Fort Lauderdale, FL 33313<br>1-800-728-3632 or 954-377-9102<br>www.debtfree.org | Consumer Credit and Budget Counseling, Inc.<br>Reference # 9823498<br>299 South Shore Road US Route 9<br>PO Box 866<br>Marmora, NJ 08223<br>609-390-9652 or 1-888-738-8233<br>Se Habla Espanol 1-888-5 DUDAS<br>www.cc-bc.com | Consumer Credit and Debt Counseling, Inc.<br>Reference # 9600120<br>95 North Lakeview Drive, PO Box 38<br>Gibbsboro, NJ 08026<br>856-566-1666 or 1-800-720-2232 |

INTERNET REPRINT

| Consumer Credit Counseling Service of Delaware Valley, Inc.<br>Reference # 9100890<br>One Cherry Hill Suite 215<br>Cherry Hill, NJ 08002<br>1-800-989-CCCS (2227) or 215-563-5665<br>www.cccsdv.org | Consumer Credit Counseling Service of Greater Atlanta, Inc.<br>Reference # 9945985<br>991 US Hwy 22, Suite 200<br>Bridgewater, NJ 08807<br>1-800-251-CCCS (2227)<br>www.cccsatl.org | Consumer Credit Counseling Service of Maryland and Delaware, Inc.<br>Reference # 0753927<br>203 East Broadway<br>Salem, NJ 08079<br>410-747-2050<br>www.cccsnj.org |
|---|---|---|
| Consumer Credit Counseling Service of New Jersey, Inc.<br>Reference # 8303159<br>185 Ridgedale Ave<br>Cedar Knolls, NJ 07927<br>1-888-726-3260 or 973-267-4324<br>www.cccsnj.org | Consumer Credit Counseling Service of San Francisco<br>Reference # 0402042<br>811 Church Road, Suite 105<br>Cherry Hill, NJ 08002<br>1-800-777-7526<br>www.cccsf.org | Consumer Education Services, Inc.<br>Reference # 9922598<br>3801 Lake Boone Trail, Suite 400<br>Raleigh, NC 27607<br>1-888-590-2374 or 919-838-8211<br>www.mycesi.org |
| Credit Guard of America, Inc.<br>Reference # 9906663<br>111 Cornelia St.<br>Boonton, NJ 07005<br>1-800-500-6489 or 561-241-5828<br>www.creditguard.org | Credit Management and Counseling Services, Inc.<br>Reference # 9915899<br>46 Fawn Hollow Lane<br>Mullica Hill, NJ 08062<br>856-262-0645 | Debt Counseling Corp<br>Reference # 0512435<br>One Gateway Center, Suite 2600<br>Newark, NJ 07102<br>1-888-354-6332 or 973-622-8212<br>www.debtcounselingcorp.org |
| Family Financial Education Foundation, Inc.<br>Reference # 9930037<br>724 Front St., Suite 340, PO Box 2125<br>Evanston, WY 82931<br>1-877-292-8444 or 307-789-2010<br>www.ffef.org | Family Guidance Center Corporation<br>Reference # 9500845<br>1931 Nottingham Way<br>Hamilton, NJ 08619<br>609-586-8574<br>http://abstraining.net/fgccorp/ | Garden State Consumer Credit Counseling, Inc. (Novadebt)<br>Reference # 9101211<br>225 Willowbrook Road, PO Box 5012<br>Freehold, NJ 07728<br>1-800-99-BILLS or 732-409-6281<br>www.novadebt.org |
| Greenpath Inc (Greenpath DebtSolutions)<br>Reference # 9915964<br>847 Meadows Office Complex, 301 Route 17<br>North Rutherford, NJ 07070<br>1-800-550-1961 or 248-553-5400<br>www.greenpath.com | Incharge Debt Solutions<br>Reference # 9914761<br>3000 Atrium Way, Suite 235<br>Mount Laurel, NJ 08054<br>1-800-565-8953 or 407-532-5553<br>www.incharge.org | Lighthouse Credit Foundation, Inc.<br>Reference # 0504452<br>151 W Passaic Street<br>Rochelle Park, NJ 07662<br>1-800-339-2361 or 727-450-1082<br>www.lighthousecredit.org |
| Money Management International, Inc.<br>Reference # 9951553<br>106 Apple Street, Suite 105<br>Tinton Falls, NJ 07724<br>1-866-889-9347 or 713-394-3139<br>www.moneymanagement.org | North Seattle Community College Foundation D/B/A American Financial Solutions<br>Reference # 9925870<br>One Green Tree Center, Suite 201<br>Marlton, NJ 08053<br>1-888-282-5494 or 206-374-8839 | Take Charge America, Inc.<br>Reference # 0635379<br>One Greentree Center, Suite 201<br>Marlton, NJ 08053<br>1-800-823-7396 or 623-266-6152<br>www.takechargeamerica.org |

INTERNET REPRINT

**Seterus**™

REPRESENTATION OF PRINTED DOCUMENT

### United States Department of Housing and Urban Development
### Servicemembers Civil Relief Act Notice

## Legal Rights and Protections Under the SCRA
- Servicemembers on "active duty" or "active service," or a dependent of such a servicemember, may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 U.S.C App. 501, et seq.) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?
- Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard, and active service National Guard;
- Active servicemembers of the commissioned corps of the National Oceanic and Atmospheric Administration;
- Active servicemembers of the commissioned corps of the Public Health Service;
- United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Dependents of the above (e.g., spouse or children).

## What Legal Protections Are Servicemembers Entitled to Under the SCRA?
- The SCRA states that a debt incurred by a servicemember, or spouse jointly, prior to entering military service shall not bear interest at a rate above 6 percent during the period of military service and until one year after the end of such service.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during or within 12 months after the servicemember's military service, a court may stop the proceedings for a period of time or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within 12 months after the servicemember's military service unless the creditor has obtained a court order approving the sale, foreclosure, or seizure of the real estate.

## How Does a Servicemember or Dependent Request Relief Under the SCRA?
- A servicemember, dependent, or both may request relief under the SCRA by providing a written notice with a copy of the servicemember's military orders to Seterus, PO Box 1077; Hartford, CT 06143-1077.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?
- The U.S. Department of Defense's information resource is "Military One Source."
  - Website: www.militaryonesource.mil
  - Toll-free telephone numbers:
    - From the United States: 800.342.9647
    - From outside the United States (with applicable access code): 800.342.9647
    - International Collect: 484.530.5908
- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate or their installation's Legal Assistance Officer. A military legal assistance office locator for each branch of the armed forces is available at http://legalassistance.law.af.mil/content/locator.php.

If you have any questions, please contact us at 866.570.5277. For borrowers having difficulty making their payments, we have loan specialists available Monday-Thursday 5 a.m. to 9 p.m., Friday 5 a.m. to 6 p.m., and Saturday 9 a.m. to 12 p.m. (Pacific time). Saturday hours may vary.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. **COLORADO**: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY**: 1411669, 1411665, 1411662. **TENNESSEE**: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.

# EXHIBIT 4

RECEIVED    THURSDAY 9/22/2016 3:51:30 PM 15304756
FILED Sep 22, 2016

STERN LAVINTHAL & FRANKENBERG LLC
105 Eisenhower Parkway - Suite 302
Roseland, NJ 07068
(973) 797-1100
Attorneys for Plaintiff
Djibril Carr, Esq.: 118012014
201603086

F -026124-16

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION BERGEN COUNTY |
| Plaintiff | DOCKET NO.: |
| vs. | CIVIL ACTION |
| EDUVIGIS M. PEREZ;  MR. PEREZ, HUSBAND OF EDUVIGIS M. PEREZ; MARINO PEREZ and BERGEN COUNTY BOARD OF SOCIAL SERVICES | MORTGAGE FORECLOSURE COMPLAINT |
| Defendant(s) | |

FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae"), a corporation

organized and existing under the laws of the United States of America, with an office at 3900

WISCONSIN AVENUE NW, WASHINGTON, DC 20016-2892, the plaintiff in the above entitled

cause, says:

## FIRST COUNT

1. On the date set forth in 1-a following, the obligor(s) named in 1-b following, in the sum set

forth in 1-d following executed to said obligee so named in 1-c following, an obligation, bond/note,

dated the date set forth in 1-a following, to secure the sum set forth in 1-d following, payable on the

1

date set forth in 1-f following, with interest at the rate per annum set forth in 1-e following, payable as set forth in 1-g following:

    1-a. Date: May 16, 2007

    1-b. Obligor(s): EDUVIGIS M. PEREZ

    1-c. Obligee: AMERICAN FINANCIAL RESOURCES, INC.

    1-d. Amount of Obligation: $304,000.00

    1-e. Per annum interest rate: 7.875%

    1-f. Due date of Obligation: June 1, 2037

    1-g. Manner of payment of Obligation: By the payment of the initial sum of $2204.21 per month in equal monthly installments for interest and principal commencing on July 1, 2007 and continuing on the first day of each month thereafter, with a final installment of all accrued and unpaid interest and any unpaid principal on or before June 1, 2037.

    1-h. The note and mortgage do not contain a pre-payment penalty clause.

    1-i. A Loan Modification Agreement between EDUVIGIS M. PEREZ and INDYMAC MORTGAGE SERVICES was executed on or about September 19, 2012 and fully executed on April 10, 2013, which modified the principal balance to $317,556.82. Interest will be charged on the unpaid principal balance for the first 5 years of the modified term at the yearly rate of 2.000% from the 1st day of September, 2012, the borrower promises to make monthly payments of principal and interest of $1,216.28, beginning on the 1st day of October, 2012. Beginning on the 1st day of the 6th year, interest will be charged at the yearly rate of 3.000% from the 1st day of September, 2017, the Borrower promises to make monthly payments of principal and interest of $1,353.11 beginning on the 1st day of October, 2017. Beginning on the 1st day of the 7th year, interest will be charged at the yearly rate of 3.625% from the 1st day of September, 2018, the Borrower promises

2

to make monthly payments of principal and interest of $1,439.59 beginning on the 1st day of October, 2018, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full on the maturity date of April 1, 2041.

2.  To secure the payment of the aforesaid obligation, the obligor(s), named in paragraph 1-b above, and mortgagor(s), EDUVIGIS M. PEREZ and MARINO PEREZ, executed to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN FINANCIAL RESOURCES, INC., (hereinafter, Mortgagee), mortgage of even date with said obligation, and thereby conveyed to the Mortgagee in fee the land hereinafter described, on the express condition that such conveyance should be void if payment should be made at the time and times, and in the manner described in said obligation.  Said mortgage was duly recorded on the date set forth in 2-a following, in the County Office set forth in 2-b following, and in the County Mortgage Book set forth in 2-c following:

2-a.  Date mortgage was recorded: May 31, 2007

2-b.  County Office where mortgage was recorded: Clerk/Register of Bergen County.

2-c.  Mortgage Book 16776, Page 453

2-d.  Said obligation and mortgage were assigned to OCWEN LOAN SERVICING, LLC by written assignment dated February 5, 2014 and of record on February 19, 2014 in the Office of the Clerk/Register of Bergen County in Assignment Book 01620, Page 1544.

2-e.  Said obligation and mortgage were further assigned to FEDERAL NATIONAL MORTGAGE ASSOCIATION by written assignment dated May 8, 2015 and of record on May 27, 2015 in the Office of the Clerk/Register of Bergen County in Assignment Book V01947, Page 1628.

3. The mortgaged premises are described as follows:

3

See Schedule "A" annexed hereto and made a part hereof. The Metes and Bounds description is from the mortgage that is the subject of this foreclosure.

    3-a.    Plaintiff is the Owner of the Note and Mortgage.

    3-b.    This is not a First Purchase Money Mortgage.

    3-c.    EDUVIGIS M. PEREZ is a/k/a EDUVIGIS PEREZ, and is designated as EDUVIGIS M. PEREZ.

    3-d.    The mortgage described in paragraph 3 contains a scrivener's error in the legal description, referring to the first course of the metes and bounds description repeats the coordinates.

    4.    The obligation aforesaid contained an agreement that if any installment payment of interest and principal, taxes and insurance premiums should remain unpaid for thirty (30) days after the same shall fall due, the whole principal sum, with all unpaid interest and late charges, if any, should at the option of the above named mortgagee or its heirs, executors, administrators, representatives or assigns, become immediately due and payable.

    5.    The following instruments appear of record which affect or may affect the premises described in paragraph 3 above, all of which instruments are subordinate to the lien of the mortgage set forth in paragraph 2 above:

    a)    EDUVIGIS M. PEREZ executed the mortgage as an unmarried person. The present marital status of EDUVIGIS M. PEREZ cannot be ascertained and defendant, MR. PEREZ, the unknown spouse of EDUVIGIS M. PEREZ, is hereby named for any interest or right he/she may hold in the property. Any title interest, dower/curtesy or possessory right, if any, acquired by MR. PEREZ, was subsequent to the subject mortgage. Any interest or right she/he has in such property is subordinate and subject to the aforesaid

4

mortgage. MR. PEREZ, HUSBAND OF EDUVIGIS M. PEREZ is made a party defendant by virtue thereof.

b) On September 1, 1992 a Child Support Judgment was entered in the Superior Court of New Jersey (No. J-212875-1991) (CS No. CS40581870A) in favor of BERGEN CO BD SOCIAL SERVS and against EDUVIGIS PEREZ in the sum of amount not specified, plus costs. The above referenced judgment is joined for any outstanding balance that may have accrued since the recording date of the Mortgage to present. BERGEN COUNTY BOARD OF SOCIAL SERVICES is made a party defendant by virtue thereof.

6. Pursuant to the terms of the obligation referred to in paragraph 1 above (the terms of which are incorporated in the mortgage referred to in paragraph 2 above), the obligee named in said obligation reserved the right to pay taxes or other liens affecting the premises herein described, which liens are superior to the lien of the mortgage referred to in paragraph 2 above and which liens, when paid by the obligee or assignee, together with interest thereon as provided in said obligation and mortgage, are to be added to the amount due on the obligation and mortgage.  The obligee may be required to pay such liens and/or insurance and necessary expenses to preserve the security during the pendency of this action and will demand that such payments so made by said obligee or assignee together with interest be added to the mortgage debt as aforesaid and secured by the Plaintiff's mortgage.

6-a.  Said note and mortgage further provide that the Obligee may collect a late charge not to exceed 5.000% for each dollar of each payment more than 15 days in arrears to cover an extra charge in handling delinquent payments.

7.   By the terms of the obligation and mortgage referred to in paragraphs 1 and 2 above, Plaintiff herein has the right to foreclose under the terms of the mortgage.

8.     By the terms of the obligation and mortgage referred to in paragraphs 1 and 2 above, an installment payment of principal and interest, taxes and insurance became due on 4/1/2016. Said installment payment and all subsequent monthly installment payments have not been paid. The defendants named in paragraph 1-b above, or the grantee or grantees, if any, of said defendants, are in default having failed, refused or neglected to make said payments to the plaintiff herein as required. Plaintiff herein, by reason of said default elected that the whole unpaid principal sum due on the aforesaid obligation and mortgage referred to in paragraphs 1 and 2 above with all unpaid interest and advances made thereon shall now be due.

8-a.     The obligor has failed to make the installment payment due on 4/1/2016, and all payments becoming due thereafter, therefore the loan is in default.

9.     Any interest or lien on the premises described in paragraph 3 above which the mortgagors named in paragraph 2 above or the grantees of said mortgagors, or which subsequent encumbrances or lien holders, if any, named in paragraph 5 above, who are the defendants herein have or claim to have in or upon the aforesaid mortgaged premises or some part thereof are subject and subordinate to the lien of the mortgage set forth in paragraph 2 above, which mortgage is held by the plaintiff herein.

10.     At least 30 days prior to filing the Complaint, plaintiff complied with the notice requirement of Section 4 of the New Jersey Fair Foreclosure Act.

**WHEREFORE**, the plaintiff demands judgment:

(a)     Fixing the amount due on the mortgage referred to in paragraph 2 above;

(b)     Barring and foreclosing the defendants and each of them of all equity of redemption in and to the aforesaid lands;

(c)     Directing that plaintiff be paid the amount due to plaintiff as provided in the mortgage set forth in paragraph 2 above, together with interest and costs;

6

(d)    Adjudging that the lands described in paragraph 3 above be sold according to law to satisfy the amount due to plaintiff on the mortgage set forth in paragraph 2 above;

(e)    Appointing a receiver of the rents, issues and profits of the lands described in paragraph 3 above.

**SECOND COUNT**

1.  By the terms of the obligation and mortgage referred to in paragraphs 1 and 2 of the First Count of this Complaint, the plaintiff herein is entitled to possession of the tract of land with the appurtenances as more particularly described in paragraph 3 of the First Count herein.

2.  On the date set forth in 2-a following, the plaintiff, by the terms of the obligation and mortgage aforesaid, became entitled to possession of the premises described in paragraph 3 of the First Count of this Complaint.

2-a.  The obligor has failed to make the installment payment due on 4/1/2016, and all payments becoming due thereafter, therefore the loan is in default.

3.  The defendants named in paragraph 1-b, paragraph 2 and paragraph 5 of the First Count of this Complaint have or may claim to have certain rights in the premises described in paragraph 3 of the First Count of this Complaint and by reason thereof have since the date set forth in paragraph 2-a above deprived the plaintiff herein of the possession of the premises aforesaid.

**WHEREFORE**, the plaintiff demands judgment against the defendants or anyone holding possession under them on behalf of itself as well as the successful purchaser at the foreclosure sale:

(a) For possession of said premises.

(b) For damages for mesne profits.

(c) For costs.

7

STERN LAVINTHAL & FRANKENBERG LLC

BY: /s/ Djibril Carr, Esq.
       Djibril Carr, Esq.

DATED: September 15, 2016

8

## SCHEDULE "A"

ALL THAT CERTAIN tract or parcel of land and premises situate, lying and being in the BOROUGH OF BERGENFIELD, COUNTY OF BERGEN and STATE OF NEW JERSEY, being more particularly described as follows:

BEGINNING at a point on the westerly line of South Prospect Avenue as laid out and in use distant 77.64 feet southwesterly along the same from the intersection of the westerly line of South Prospect Avenue as laid out in use and the southerly line of West Main Street; running thence

1. South 25 degrees 38 minutes West along the westerly line of South 25 degrees 38 minutes West along the westerly line of South Prospect Avenue as laid out and in use 52.46 feet to a point; thence

2. North 83 degrees 23 minutes West 130.73 feet to a point; thence

3. North 06 degrees 37 minutes East 23.00 feet to a point; thence

4. South 63 degrees 23 minutes East 50.00 feet to a point; thence

5. North 06 degrees 37 minutes East 26.60 feet to a point; thence

6. South 83 degrees 23 minutes East 97.82 fee to the point or place of BEGINNING.

## *SUBJECT TO THE RESULTS OF AN ACCURATE SURVEY.*

Known and designated as Block 94 Lot 6 on the Official Tax Map of the BOROUGH OF BERGENFIELD, BERGEN COUNTY, NEW JERSEY

Commonly known as 4 S PROSPECT AVE, BERGENFIELD, NEW JERSEY 07621

201603086

9

**CERTIFICATION OF DILIGENT INQUIRY TO BE ANNEXED TO
RESIDENTIAL MORTGAGE FORECLOSURE COMPLAINTS PURSUANT
TO RULE 1:5-6(c)(1)(E) AND RULE 4:64-1(a) (2) and (a) (3)**

Djibril Carr, Esq., of full age, hereby certifies and says:

1. On 09/15/2016 and 09/22/2016, I communicated by client interface and overnight delivery with the following named employee(s) of Seterus, Inc., who stated that he/she personally reviewed the complaint to be filed with the court and that he/she confirmed compliance with *Rule* 4:64-1(b)(1) through (b)(10) and (b)(12) through (b)(13).

2. The name, title and responsibilities of the plaintiff's employee(s) or plaintiff's mortgage loan servicer's employee(s) with whom I communicated are: URLET HILL, DOCUMENT SPECIALIST, and WHO REVIEWS AND EXECUTES DOCUMENTS.

3. The above named employee(s) stated that the relationship between his/her employer and the plaintiff is: AS SERVICING AGENT FOR LOANS HELD BY THE PLAINTIFF, and confirmed that his/her employer is authorized to act on behalf of the plaintiff in this action.

4. Based on my communication with the above-named employee(s) of plaintiff or plaintiff's mortgage loan servicer, as well as my own inspection of the loan information supplied by the plaintiff or the plaintiffs mortgage loan servicer and other diligent inquiry, I execute this certification to comply with the requirements of Rules 1:4-8(a), 1:5-6(c)(1)(E), and 4:64-1(a)(2) and (a)(3).

5. I am aware that I have a continuing obligation under Rule 1:4-8 to amend this certification if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support for any factual assertions proffered by plaintiff in any court filings or documents in this case.

I certify that the foregoing statements made by me are true, I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

STERN LAVINTHAL & FRANKENBERG LLC

BY: /s/    Djibril Carr, Esq.
Djibril Carr, Esq.

DATED: September 22, 2016

**Unless you notify us in writing within thirty (30) days after receipt of this letter that the debt, or any part of it, is disputed, we will assume that the debt is valid. If you do notify us in writing within thirty (30) days after receipt of this letter that you dispute the debt or any part of it, we will obtain verification of the debt and mail it to you. Also upon your written request within thirty (30) days after receipt of this letter, we will provide you with the name and address of the original creditor if different from the current creditor. This letter is an attempt to collect a debt and any information obtained will be used for that purpose.**

201603086

# EXHIBIT 5

STERN LAVINTHAL & FRANKENBERG LLC
105 Eisenhower Parkway - Suite 302
Roseland, NJ 07068
(973) 797-1100
Attorneys for Plaintiff
Jeanette F. Frankenberg, Esq.: 034761986
201603086

| FEDERAL NATIONAL MORTGAGE ASSOCIATION | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: |
|---|---|
| Plaintiff | BERGEN COUNTY |
| vs. | DOCKET NO: F-026124-16 |
| EDUVIGIS M. PEREZ, et al. | CIVIL ACTION |
| Defendant(s) | PROOF OF AMOUNT DUE AFFIDAVIT AND SCHEDULE |

_____ **Kurt Bowling** _____, of full age, being duly sworn according to law, depose and say:

1. I, _____ **Kurt Bowling** _____ am employed by Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America, at its _____ **Beaverton** _____ , _____ **Oregon** _____ (*insert the city/state location*) office as a(n) ___ **Document Management Specialist** My responsibilities in this position are: _____ **To review and execute documents** _____ and, as such, I have the authority to make, on behalf of the plaintiff, the amount due computation presented in the attached schedule of amount due.

2. I have thoroughly reviewed the plaintiff's books and business records concerning the note and mortgage loan described in the plaintiff's complaint.

3.     Said books and business records indicate that the default of the defendants-borrower(s), EDUVIGIS M. PEREZ, remains uncured and there is due to the plaintiff in this action the sum of $289,681.84, as set forth in the Proof of Amount Schedule annexed hereto. I have reviewed all entries and calculations, and they are correct. *Per Diem* interest, as set forth in the annexed schedule, will accrue on the principal from January 3, 2017.

4.     The property described in the complaint in this action cannot be divided and should be sold as a single tract.

5.     There are no just debts, set-offs, credits or allowances due at this time or to become due from the plaintiff to the defendant-borrower(s), other than those set forth herein.

6.     The plaintiff is the owner/holder of the aforesaid note and mortgage.

7.     I understand that the court will rely upon this affidavit in support of the plaintiff's application for a foreclosure judgment in the within action.

Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America.

(Signed)                                                                          1-26-2017

(Print name)          **Kurt Bowling**

Sworn and submitted before me, this

2-6  day of  Jan                   , 20 17

Notary Public of the State of  **Oregon**

My Commission expires:          3 3 17

OFFICIAL SEAL
JEANNETTE L CAO
NOTARY PUBLIC – OREGON
COMMISSION NO. 477207B
MY COMMISSION EXPIRES MARCH 03, 2017

Obligation (NOTE AND MORTGAGE) bearing date of: 5/16/2007
Recorded On 5/31/2007, in BERGEN County, in Book 16776, Page 453
Property Address: 4 S PROSPECT AVE, BERGENFIELD, New Jersey 07621
Mortgage Holder: FEDERAL NATIONAL MORTGAGE ASSOCIATION

## STATEMENT OF AMOUNT DUE

| | | |
|---|---|---|
| Unpaid Principal Balance as of: 1/3/2017 | | $287,693.92 |
| Interest from 3/1/2016 to 1/3/2017 | | $4,826.43 |
| (Interest = $15.76 per day times 308 days.) | | |
| Interest rate = 2.% per year | | |
| | | |
| Late Charges from 4/18/2016 to 8/6/2016 | | $304.05 |
| ($60.81 per month times 5 months) | | |
| | | |
| Advances through 1/3/2017 for: | | |
| Real Estate Taxes: | $20,765.61 | |
| Home Owners Insurance Premiums: | $3,103.00 | |
| Flood Insurance Premiums: | $0.00 | |
| Mortgage Insurance Premiums: | $0.00 | |
| Inspections: | $300.00 | |
| Winterizing/Securing: | $0.00 | |
| | | |
| **Sub-total of Advances:** | $24,168.61 | |
| **Less Credit:** | ($27,266.50) | |
| **Net Advance:** | | ($3,097.89) |
| | | |
| Interest on Advances from _____ to _____ | | |
| **Suspense Balance** | | ($0.00) |
| Other charges (specify)   RESTRICTED ESCROW | | ($44.67) |
| | | |
| TOTAL DUE as of 1/3/2017: | | $289,681.84 |

Surplus Money: If after the sale and satisfaction of the mortgage debt including costs and expenses, there remains any surplus money, the money will be deposited into the Superior Court Trust Fund and any person claiming the surplus, or any part thereof, may file a motion pursuant to Court Rules 4:64-3 and 4:57-2 stating the nature and extent of that person's claim and asking for an order directing payment of the surplus money. The Sheriff or other person conducting the sale will have information regarding the surplus, if any.

Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America.

| | |
|---|---|
| Signature: | _Kurt Bowl_ |
| Print or Type Name: | **Kurt Bowling** |
| Date: | **JAN 2 6 2017** |

| DATE | TAXES | HAZARD | CREDITS |
|---|---|---|---|
| 3/1/2014 | | | ($3,681.41) |
| 3/9/2014 | | | ($763.41) |
| 3/26/2014 | | $930.00 | |
| 4/7/2014 | | | ($763.41) |
| 4/16/2014 | $1,966.36 | | |
| 5/8/2014 | | | ($763.41) |
| 6/9/2014 | | | ($763.41) |
| 7/11/2014 | | | ($763.41) |
| 8/11/2014 | | | ($763.41) |
| 8/22/2014 | $2,010.48 | | |
| 9/9/2014 | | | ($763.41) |
| 9/23/2014 | | | ($1,446.00) |
| 10/10/2014 | | | ($763.41) |
| 10/20/2014 | $2,010.47 | | |
| 11/13/2014 | | | ($763.41) |
| 12/12/2014 | | | ($763.41) |
| 1/13/2015 | | | ($763.41) |
| 1/20/2015 | $1,988.42 | | |
| 2/10/2015 | | | ($763.41) |
| 2/18/2015 | | $1,039 00 | |
| 3/6/2015 | | | ($763.41) |
| 4/6/2015 | | | ($763.41) |
| 4/14/2015 | $1,217.32 | | |
| 6/12/2015 | | | ($763.41) |
| 7/29/2015 | | | ($763.41) |
| 7/29/2015 | | | ($763.41) |
| 8/10/2015 | $2,062.38 | | |
| 8/18/2015 | | | ($763.41) |
| 9/18/2015 | | | ($763.41) |
| 10/16/2015 | | | ($763.41) |
| 11/16/2015 | | | ($763.41) |
| 12/2/2015 | $2,062.37 | | |
| 12/15/2015 | | | ($763.41) |
| 12/31/2015 | | | ($0.08) |
| 1/11/2016 | | | ($763.41) |
| 1/19/2016 | $2,025.40 | | |
| 2/11/2016 | | | ($763.41) |
| 2/11/2016 | | $1,134 00 | |
| 3/11/2016 | | | ($763.41) |
| 4/12/2016 | | | ($763.41) |
| 4/18/2016 | $1,244.46 | | |
| 5/11/2016 | | | ($763.41) |
| 6/14/2016 | | | ($763.41) |
| 7/19/2016 | | | ($763.41) |
| 8/1/2016 | $2,088.98 | | |
| 10/25/2016 | $2,088.97 | | |
| 12/31/2016 | | | ($0.12) |
| | $20,765.61 | $3,103.00 | ($27,266.50) | ($3,397.89) |

| DATE | PROPERTY INSPECTIONS |
|---|---|
| 5/21/2015 | $15.00 |
| 6/24/2015 | $15.00 |
| 7/22/2015 | $15.00 |
| 8/19/2015 | $15.00 |
| 9/23/2015 | $15.00 |
| 10/21/2015 | $15.00 |
| 11/24/2015 | $15.00 |
| 12/23/2015 | $15.00 |
| 1/27/2016 | $15.00 |
| 2/24/2016 | $15.00 |
| 3/31/2016 | $15.00 |
| 4/27/2016 | $15.00 |
| 5/25/2016 | $15.00 |
| 6/29/2016 | $15.00 |
| 7/27/2016 | $15.00 |
| 8/26/2016 | $15.00 |
| 9/26/2016 | $15.00 |
| 10/26/2016 | $15.00 |
| 11/30/2016 | $15.00 |
| 1/4/2017 | $15.00 |
| | $300.00 |

| DATE | LATE CHARGES |
|---|---|
| 4/18/2016 | $60.81 |
| 5/16/2016 | $60.81 |
| 6/16/2016 | $60.81 |
| 7/18/2016 | $60.81 |
| 8/16/2016 | $60.81 |
| | $304.05 |

# EXHIBIT 6

May 4, 2017

<u>**Via Priority Mail & Email**</u>
Jeanette F. Frankenberg, Esq., Managing Member
Stern Lavinthal & Frankenberg, LLC
105 Eisenhower Parkway
Suite 302
Roseland, NJ 07068



Adam L. Deutsch, Esq.*
Northeast Law Group, LLC
P.O. Box 60717
Longmeadow, MA 01106
Phone (413) 285-3646
Facsimile (413) 200-3305
www.northeastlawgroup.com
*Admitted in MA, NJ, NY

      Re:    **Federal National Mortgage Association v. Perez**
             **F-26124-16**
             **Property Address: 4 South Prospect Avenue Bergenfield, NJ 07621**

Dear Ms. Frankenberg

      I have been retained by Eduvigis M. Perez and Marino Perez, defendants in the above referenced matter.  On February 22, 2017 your law firm obtained entry of Final Judgment in the above referenced litigation on behalf of Federal National Mortgage Association ("Fannie Mae").  I have reviewed the documents filed within the foreclosure docket and have reviewed the records of Defendants.  Based upon this review, it appears that you and your client relied on inaccurate information regarding the payment history and the foreclosure should not have taken place.  The errors are significant and this letter does not disclose each and every error discovered.  As a courtesy, I am reaching out to you to present the inaccuracies and errors with the hope that you will agree the foreclosure should not have been filed, that judgment should be voluntarily vacated and the case dismissed[1].

      Time is of the essence.  Please let me know on or before May 12, 2017 whether you agree to voluntarily vacate the final judgment.  If you need additional time to review the information with your client, let me know and I should be able to agree to an extension under the condition that no sale of the property is scheduled.  If I do not hear from you, or you confirm that the judgment will not be vacated, my clients will commence motion practice and pursue all affirmative claims available.  Please be further advised that my clients have agreed that if Stern

---

[1] This is not the first time Stern Lavinthal & Frakenberg, LLC has relied on inaccurate information in the context of a foreclosure debt collection action. [Psaros v. Green Tree Servicing, LLC et al U.S.D.J Civ. Action No. 15-4277] I am hopeful we can avoid litigation in getting to resolution.

Lavinthal & Frankenberg LLC voluntarily vacates the final judgment and dismisses the foreclosure action, the Defendants will not pursue available affirmative claims for damages against your law firm.

The April 19, 2016 Notice of Intention to Foreclose sent to Defendants allege inaccurately "The loan is in default because you have failed to pay the required monthly installments commencing with the payment due 01/01/2016". [**Exhibit 1**: NOI]  The Complaint filed on September 22, 2016 alleges that Defendants defaulted on the loan as of April 1, 2016. [**Exhibit 2**: Complaint ¶8]  Defendant's bank records show that from the date of the loan modification in September 2012 (first modified payment due Oct 2012) through August 2016, Defendants made 47 consecutive monthly payments on the loan. [**Exhibit 3:** Client bank records]  Payments were made to three servicers, Onewest Bank then Ocwen, then Seterus. Defendants records show that on April 12, 2016 and August 12, 2016 Seterus unilaterally refunded Defendant's loan payments in the amount of $1,979.69.  The reason for the return of funds is unknown[2].  After August 2016, Seterus refused to accept payments from Defendants although they made attempts to pay.

It appears from the records that a loan payment made by Defendants was misplaced by a servicer that preceded Seterus.  An October 13, 2016 letter from Seterus states "Our records indicate that we have received and credited all the payments to the loan that were indicated in your correspondence while we have serviced the loan.  Please be advised your loan transfer to Seterus on May 1, 2015, delinquent for the January 1, 2015 installment." [**Exhibit 4**: October 13, 2016 letter]  Defendants bank statements illustrate that Defendants did not miss a single payment or make a payment after the grace period between the start of the modification in October 2012 until Ocwen transferred servicing to Seterus.  Moreover, had Defendants missed a payment, the issue would have been raised in the Chapter 13 Bankruptcy that was open between 2010 and 2015.

As you may be aware, Defendants successfully completed a Chapter 13 Bankruptcy which began on June 22, 2010. U.S.D.C. N.J. 10-29058.  The mortgage loan in question was originally part of the Chapter 13 sixty month cure plan. In September 2012 Indymac Bank (a/k/a Onewest Bank FSB) approved Defendants for a loan modification which Defendants promptly began performing under.  In March 2013 Defendants obtained an Order from the Bankruptcy Court approving the September 2012 loan modification. [**Exhibit 5:** Order approving loan modification]  The Order explains "All arrears are to be rolled into the mortgage modification and therefore the Trustee should make no further disbursements on the arrears claim as filed." Id. As a result of the Order, the mortgage loan was removed as a scheduled claim in the Chapter 13 bankruptcy plan and Defendants were deemed reinstated.  The Mortgage Loan remained part of the bankruptcy proceeding to the extent the creditor continued to receive notices and make appearances in the matter.  In November 2015 when a final discharge was entered, Fannie Mae

---

[2] Based upon Defendant's bank statements, it appears that Seterus inappropriately charged two payments of $1,979.69 over the phone on April 11, 2016.  Presumably the April 12, 2016 refunded payment is for one of the two April 11, 2016 charges.

did not make an objection and did not allege that the Defendants failed to meet any of their obligations on the loan.  The Bankruptcy record is void of any allegations that Defendants missed payments.

Ocwen had an internal error regarding the modification.  Defendant has limited records of servicing documents dating back to 2013, however the documents available are illustrative of an error.  Ocwen became the loan servicer on or about September 2013.  The monthly statement from Ocwen dated September 18, 2013 claims the "Total Unpaid Amount" is $11,899.81, suggesting a default. [**Exhibit 6**: September 18, 2013 Statement]  That statement also claims the principal balance owed on the loan was $317,556.82 which is the original modified balance as of September 2012.  By the September 2013 statement date, Defendants had already paid a total of $21,157.85 on the modified loan.  It appears Ocwen held this sum of money in a suspense account which can be viewed on the September 18, 2013 statement marked "Other".  Thereafter, the problem is only compounded.

The Ocwen statement dated October 18, 2013 shows the "Total Unpaid Amount" as $34,937.35. [**Exhibit 7**: October 18, 2013 Statement]  The October statement shows the Principal Balance remaining stagnant at the original modified sum of $317,556.82.  On the October statement, there is activity under the "Account Activity Since Last Statement" indicating that money was received by Ocwen toward the loan.  Unfortunately, Ocwen appears to have not applied the money to the loan account.

Defendants are in possession of one additional Ocwen statement dated November 11, 2013. [**Exhibit 8**: November 11, 2013 statement]  That statement claims the "Total Unpaid Amount" to be $9,923.45, again inaccurately suggesting a default.  The November 2013 statement does show the Principal Balance reduced to $310,634.89.  These three statements strongly suggest that from day one, Ocwen's records did not accurately reflect the payment history of the modified loan.  These inaccurate records in turn lead Seterus to have inaccurate payment history records and the incorrect belief that the loan was in default from the very beginning of Seterus time as loan servicer.

Unfortunately, the inaccuracy of servicing records has created an unwarranted foreclosure and has created significant damages for Defendants.  Another example of incorrect information can be viewed in the Final Judgment Application submitted by Stern Lavinthal & Frankenberg LLC on behalf of Fannie Mae.  The application includes a certification of Seterus employee Kurt Bowling who claims the creditor is owed real estate taxes and insurance totaling $23,868.61.  [**Exhibit 9**: Affidavit of Amount Due] The ledger submitted by Mr. Bowling calculates the sum of taxes and insurance owed prior to the alleged default date of April 1, 2016 as $18,446.20.  It is inaccurate, false, and/or misleading to allege that Defendants owe $18,446.20 for taxes and insurance incurred prior to the default date.  Additional errors include the charging of property inspections prior to the default date.

Please note that Defendants would like to put this nightmare behind them.  Defendants made every loan payment until Seterus refused to accept their money.  Defendants are willing

and able to resume making payments once Seterus fixes its servicing errors, vacates the judgment and dismisses the foreclosure.

If you have any questions, I am happy to discuss this matter further.

Sincerely,


*/s/ Adam Deutsch*
Adam Deutsch, Esq.

# EXHIBIT 7

May 15, 2017

**Via Certified Mail Return Receipt Requested**
Seterus, Inc.
P.O. Box 1077
Hartford, CT 06143

RE:    Eduvigis Perez
       4 South Prospect Avenue Bergenfield, NJ 07621
       Account # 29195233
       **Request for Information and Notice of Error Pursuant to the Real Estate Settlement Procedures Act ("RESPA")**

Dear Sir or Madam;

This letter is sent pursuant to the Real Estate Settlement Procedures Act as a Request for Information under 12 C.F.R. 1024.36 and a Notice of Error under 12 C.F.R. 1026.35.  I have become aware of significant errors in the servicing of my mortgage loan and request that you investigate and fix these errors.  In addition, I am requesting that you provide me with servicing records and other documents relating to my loan.  The remainder of this letter sets forth the documents being requested and the errors I have found in the servicing of my loan.  I appreciate your prompt attention to this matter and hope that it can be resolved swiftly.

**Request for Information**:
1. Please provide me with copies of the pay history for my loan dating back to origination on May 16, 2007.;
2. Please provide me with copies of all loan statements sent to me by you since you have serviced my mortgage loan;
3. Please provide me with copies of the loan servicing records provided to you by the prior servicer of the mortgage loan, Ocwen Financial Corporation;
4. Please provide me with any and all records relating to the Home Affordable Modification Agreement entered into by me on September 19, 2012 and signed by prior loan servicer Indymac Mortgage Services, a division of One West Bank, FSB on April 10, 2013;
5. Please provide me with all documents relating to property inspections ordered by you and/or another loan servicing company for which a charge/fee has been applied to my loan account.
6. Please provide me with an accounting of all payments received from me on my mortgage loan.

1

7. Please provide me with an accounting of how all payments made by me on the loan account have been applied to the loan.
8. Please provide me with all documents you received from the prior loan servicer which indicated that the loan was in default at the time you became my loan servicer.
9. Please provide me with all documents and/or records reviewed by Seterus employee Urlet Hill in September 2016 relating to the commencement of a foreclosure lawsuit against me.

**Notice of Error:**

Seterus has made multiple errors with the servicing of my mortgage loan.  The errors of Seterus may have initially been started by the prior loan servicer(s).  The following outlines the errors currently known to me.

On June 22, 2010 following a financial hardship, I filed a Chapter 13 Bankruptcy under New Jersey Case Number 10-29058.  At the time, my loan servicer was Indymac Bank, a division of One West Bank, FSB.  My mortgage was made part of the Chapter 13 sixty month repayment plan.  The mortgage loan was modified and in April 2011 the Bankruptcy Court entered an Order stating "All arrears are to be rolled into the mortgage modification and therefore the Trustee should make no further disbursements on the arrears claim as filed."  A copy of the Bankruptcy Order is attached hereto as **Exhibit 1**.  Following entry of that Order, the mortgage loan was removed from the bankruptcy estate.

My mortgage loan was then modified again in September 2012 with Indymac.  A copy of the signed modification agreement which was counter-signed by Indymac in April 2013, is attached hereto as **Exhibit 2**.  Once the modification was executed, the loan was deemed current and any previous money owed was rolled into the modified principal balance.  I made 47 consecutive monthly payments on the mortgage loan starting in October 2013.  Attached hereto as **Exhibit 3** are proofs of the loan payments I made on the loan.

The last payment I made on the loan was in August 2016.  Seterus returned my payment at that time, claimed I was in default and refused to accept subsequent monthly payments.  I was not in default in August of 2016.  This is a servicing error of Seterus.

In April 2016 Seterus sent me a letter titled "NOTICE OF INTENT TO FORECLOSE," a copy of which is attached hereto as **Exhibit 4**.  That letter incorrectly alleges "The loan is in default because you have failed to pay the required monthly installments commencing with the payment due 01/01/2016."  My bank records enclosed with this letter show that I had not missed a payment between October 2012 and January 2016 as alleged in the letter.  The April letter further states incorrectly that the loan was $8,129.57 past due at the time.  Seterus' accounting

2

records are inaccurate.  There was no default in January 2016.  The only reason payments were not made after August 2016 is because Seterus refused to take my money when I attempted to pay.

In September 2016 Seterus instructed the debt collection law firm Stern Lavinthal & Frankenberg LLC to commence a foreclosure lawsuit against me for the alleged default.  That lawsuit is filed under New Jersey case number F-026124-16.  That lawsuit incorrectly claims I defaulted on the loan on April 1, 2016.

In January 2017 Seterus employee Kurt Bowling filed an affidavit to the foreclosure court in New Jersey containing incorrect information.  The Bowling affidavit alleged that I owed interest on the loan starting on March 1, 2016 due to non-payment.  The payment records submitted with this letter demonstrate that I made all payments through August 2016 at which time Seterus refused to accept my money.  The Bowling certification also claims that I owe real estate taxes and insurance dating back to March 26, 2014.  This is incorrect.  The loan payment history shows that I made all required monthly payments through August 2016.  The Bowling affidavit also improperly claims I owe late charges for the April, May, June, July, and August 2016 payments which is not true because I made these payments on time.  Lastly, the Bowling affidavit charges me for inspections on the property dating back to May 2015.  My understanding is that no inspections should have been ordered, or charged against my account while I was making monthly payments on the loan as required by the contract.  Each of these errors must be corrected, the charges reversed and accounting corrected.

Finally, I have reviewed my credit history as reported by Equifax Information Solutions, LLC, Experian, and Transunion LLC.  Seterus has incorrectly reported my credit history to each of these credit reporting agencies.  Seterus has reported my loan as having been discharged and/or included in the Chapter 13 Bankruptcy when the loan was removed from the bankruptcy estate.  Seterus failed to report any of the payments I made on the loan after October 2015.  Seterus incorrectly reported the high balance of the loan to be $304,000 which does not accurately reflect the modified balance.  There may be additional errors with regard to the information Seterus furnished to the credit reporting agencies.

Pursuant to the Real Estate Settlement Procedures Act, please take all steps necessary to conduct an appropriate investigation and correct the servicing errors with my loan.

I remain committed to keeping my home and would have continued making payments if Seterus did not refuse to accept my money.  I am prepared to resume making my regular monthly payments once the servicing errors are fixed and Seterus agrees to accept my money.

I wrote this letter with the assistance of my attorney, Adam Deutsch, Esq. of Northeast Law Group, LLC who can be reached at the following mailing address: P.O. Box 60717 Longmeadow, MA 01106.  I ask that you send responses to this Request for Information and Notice of Error to my attorney.  I also provide formal authorization for you to speak directly with my attorney instead of contact me to discuss matters relating to my loan.

Thank you in advance for taking this letter seriously.

Sincerely,


_____
Eduvigis Perez

# EXHIBIT 8

# seterus™

PO Box 1077, Hartford, CT 06143-1077

**EL217265291US**
*L400L*

Northeast Law Group, LLC
Attn: Adam L. Deutsch, Esquire
PO Box 60717
Longmeadow, MA 01106

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

**Payments**
PO Box 54420, Los Angeles, CA 90054-0420

**Correspondence, Inquiries, and Notices**
PO Box 1077, Hartford, CT 06143-1077

**Phone:** 866.570.5277
**Fax:** 866.578.5277
www.seterus.com

June 16, 2017
Re: Inquiry regarding Eduvigis M. Perez
Loan number: █████████
Serviced by Seterus, Inc.

Dear Mr. Deutsch:

On behalf of Seterus, Inc., I am responding to correspondence to our office from your client, Eduvigis M. Perez, regarding the above-referenced loan.

Pursuant to your request we have confirmed that your attorney's office; Northeast Law Group, LLC, has been added to the loan as the authorized contact. As a result, all communications regarding the loan will be with your office. If you no longer represent her, you may advise us of this in writing to the Correspondence address listed above or by fax to 877.649.0743.

The servicing of the loan transferred to Seterus from Ocwen Loan Servicing, LLC (Ocwen) on May 1, 2015. Please be advised that the decision to transfer the loan was not that of Seterus or Ocwen, rather the owner of the loan, Fannie Mae. At the time of service transfer the loan was due for the January 1, 2015 installment.

Pursuant to your client's request and in an attempt to assist you, I have enclosed the following documentation that is relevant to the servicing of Ms. Perez's loan:

- Prior servicer payment history
- Seterus payment history
- Copy of the Account Statements since Seterus began servicing the loan May 1, 2015.
- Home Affordable Modification Agreement
- Notice of Intent to Foreclose dated April 19, 2016
- Property Inspections

The information relating to items numbered 6 and 7 can be found in the enclosed payment histories.

Please be advised that we decline to provide information relating to items numbered 3 and 9 as these items would be confidential and/or proprietary, unduly burdensome, unclear, or do not pertain to the servicing of your client's loan.

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. **COLORADO:** SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.

Re: Inquiry regarding Eduvigis M. Perez
June 16, 2017
Loan number: ████████

We further investigated the payment history provided to us by the prior servicers One West and Ocwen Loan Servicing and have been unable to determine why the loan became delinquent. As a result we have escalated the payment concerns to Ocwen Loan Servicing and have asked that Ocwen Loan Servicing provide this information. As of the date of this letter Seterus has not received a sufficient response from Ocwen Loan Servicing in order to address the payment concerns. Once we have sufficient detailed information we will follow up with additional correspondence with our findings. If we can confirm there are no missing payments all late fees, property inspection fees and foreclosure fees will be reversed from the loan. We have confirmed that an update has been sent to the major credit reporting agencies for this loan to suppress all credit reporting with the major credit reporting agencies at this time. Once the research is completed by the prior servicer we will review the credit reporting and make any necessary adjustments at that time if deemed necessary. Please be advised we are not able to make any adjustments to the credit reporting until the research is completed by the prior servicer.

As the "Notice of Errors" in your client's correspondence are primarily in regard to actions by the prior servicer(s) we are unable able to address these concerns at this time. However, as mentioned above, once we have sufficient detailed information from the prior servicer we will follow up with additional correspondence with our findings.

Please be advised that the foreclosure action will remain on hold until the research and investigation is completed.

If you have any questions, you may contact me directly at 503.686.7223. You may also contact our customer service department at our toll-free number shown above.

Sincerely,

(Amber Hicks)

Amber Hicks
Consumer and Government Affairs
Seterus, Inc.

Enclosures

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. **COLORADO:** SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.

# EXHIBIT 9

# seterus.

PO Box 1077, Hartford, CT 06143-1077

7015 1730 0000 5893 5134

*L400L*

Northeast Law Group, LLC
Attn: Adam L. Deutsch, Esquire
PO Box 60717
Longmeadow, MA 01106

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

**Payments**
PO Box 54420, Los Angeles, CA 90054-0420

**Correspondence, Inquiries, and Notices**
PO Box 1077, Hartford, CT 06143-1077

**Phone:** 866.570.5277
**Fax:** 866.578.5277
www.seterus.com

June 29, 2017
Re: Inquiry regarding Eduvigis M. Perez
Loan number:
Serviced by Seterus, Inc.

Dear Mr. Deutsch:

On behalf of Seterus, Inc., I am responding to your correspondence to our office regarding the above-referenced loan for your client, Eduvigis M. Perez.

We are still in the process of reviewing your request and need additional time to complete it, as we are waiting to receive information from the prior servicer(s) of this loan. Once we have completed our research we will send you a written response detailing our findings.

Please be advised that the foreclosure action will remain on hold until the research and investigation is completed.

If you have any questions, you may contact me directly at 503.686.7223. You may also contact our customer service department at our toll-free number shown above.

Sincerely,

*Amber Hicks*

Amber Hicks
Consumer and Government Affairs
Seterus, Inc.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. **COLORADO:** SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.
(Continued)

# EXHIBIT 10

# seterus.

PO Box 1077, Hartford, CT 06143-1077

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

7015 1730 0000 5893 5103

*L400L*

Northeast Law Group, LLC
Attn: Adam L. Deutsch, Esquire
PO Box 60717
Longmeadow, MA 01106

**Payments**
PO Box 54420, Los Angeles, CA 90054-0420

**Correspondence, Inquiries, and Notices**
PO Box 1077, Hartford, CT 06143-1077

**Phone:** 866.570.5277
**Fax:** 866.578.5277
www.seterus.com

July 21, 2017
Re: Inquiry regarding Eduvigis M. Perez
Loan number:
Serviced by Seterus, Inc.

Dear Mr. Deutsch:

On behalf of Seterus, Inc., this correspondence is follow up to our correspondence dated June 16, 2017 in regard to your client Eduvigis M. Perez and the above referenced loan.

As previously communicated the servicing of the loan transferred to Seterus from Ocwen Loan Servicing, LLC (Ocwen) on May 1, 2015. Please be advised that the decision to transfer the loan was not that of Seterus or Ocwen, rather the owner of the loan, Fannie Mae. At the time of service transfer the loan was due for the January 1, 2015 installment.

We conducted an extensive review of your client's loan in an attempt to resolve the concerns presented. As you may be aware the enclosed Home Affordable Modification Agreement (HAMP) was offered to your client on September 1, 2012. It was confirmed that this loan modification was not implemented until March 2013 after the bankruptcy court approval was received. The modification offered monthly principal and interest payments at $1,216.28 with escrow payments estimated at $683.55.

However, on the enclosed prior servicer payment history from October 2012 to June 2013 installments were satisfied with higher escrow payments; eight payments satisfied escrow at $1,565.82 and one payment was satisfied with escrow at $1,544.15. It appears the higher escrow payment amount caused the loan to reflect delinquent as your client did not remit funds sufficient to satisfy the full installments due including the higher escrow amounts. Although it was confirmed that the escrow payment amounts from October 2012 to June 2013 were significantly higher, we were advised by the prior servicer, Ocwen Loan Servicing, LLC, that no error was made as Ocwen acquired the loan in September 2013 with a due date at October 1, 2012 and at that time of acquisition the required escrow payments were in fact $1,565.82. As no errors were found we respectfully decline to adjust the credit reporting or remove any fees. As a result of the above information the loan transferred to Seterus on May 1, 2015 delinquent for the January 1, 2015 contractual installment.

We have made an attempt to reach out to the prior, prior servicer, One West Bank, who acquired the loan from Indy Mac to question the escrow payments and why those payments for the time period from October

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. **COLORADO:** SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.

Re: Inquiry regarding Eduvigis M. Perez
July 21, 2017
Loan number: ▊▊▊▊▊▊

2012 to June 2013 were significantly higher. Should we receive a response back from One West we will follow up with their findings.

As of the date of this letter, the loan remains contractually delinquent for the April 1, 2016 contractual installment for $1,979.69 and all subsequent contractual installments, plus fees and charges. Should your client wish to be reviewed for possible assistance options you may contact our customer service department at the toll-free number shown above to discuss possible options.

If you have any questions, you may contact me directly at 503.686.7223. You may also contact our customer service department at our toll-free number shown above.

Sincerely,

*amberdicks*

Amber Hicks
Consumer and Government Affairs
Seterus, Inc.


Enclosures

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. **COLORADO:** SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005